**Rachele R. Selvig**, OSB No. 095016
rselvig@thecaublefirm.com
**CAUBLE, SELVIG & WHITTINGTON, LLP**
111 SE Sixth Street
Grants Pass, OR 97526
Telephone: (541) 476-8825
Facsimile: (541) 471-1704

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **THE GREEN TRADING COMPANY, LLC,** An Oregon limited liability company;<br><br>Plaintiff;<br><br>v.<br><br>**BARRY SHY;**<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br>(CONVERSION, INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS) |

COMES NOW Plaintiff and alleges as follows:

1.

Plaintiff, The Green Trading Company is an Oregon Limited Liability Company.

2.

Defendant, Mr. Barry Shy, is a resident of the State of California.

3.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because plaintiff is an Oregon citizen and defendant is not an Oregon citizen. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4.

Venue in this district is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district.

5.

On or about November 14, 2019, plaintiff and Farmer's Choice LLC entered into an agreement and contract whereby Farmers Choice LLC agreed to store, extract CBD from, and sell hemp and the CBD extracted from it at a price to which the processor and cultivator agrees. A copy of said Agreement and Contract are attached hereto as Exhibit 1.

6.

Pursuant to the term of the Agreement and Contract, Farmers Choice LLC agreed to transport plaintiff's hemp bales to a processor of plaintiff's choice if the hemp was not processed by January 20, 2020. Farmers Choice LLC failed to perform under the terms and conditions of the Agreement and Contract.

7.

During the pendency of this dispute, defendant had influence over the operations of BT Ventures LLC, which was and is in control of the real property where plaintiff's hemp bales are held. On information and belief, Defendant has no membership interest in nor is an employee of BT Ventures LLC.

8.

In approximately February of 2020, defendant attempted to sell plaintiff's hemp bales without plaintiff's consent. Defendant has no contract with plaintiff or claim of ownership for any of the hemp bales.

9.

Starting in approximately May of 2020, plaintiff sought return of the hemp bales.

Defendant refused to release the hemp bales to plaintiff. On Defendant Barry Shy's instruction, BT Ventures LLC obtained a trespass order against an agent for plaintiff, Robbie Lesa Horton, by which she would be arrested for entering onto the real property where plaintiff's hemp bales were being held. Currently, Defendant refuses to release plaintiff from the trespass order. Defendant obtained this order from an Oregon court through misrepresentation.

10.

Defendant refuses to release plaintiff's hemp bales unless Robbie Lesa Horton fraudulently signs a release on behalf of another company ("Jupiter") which was and is suing defendant on another matter. Plaintiff was and is not a representative for Jupiter and is not authorized to sign anything on Jupiter's behalf.

11.

Defendant also seeks $5,000.00 for the storage of plaintiff's hemp bales on real property for which he has no ownership interest.

12

Defendant continues to hold Plaintiff's hemp bales.

**FIRST CLAIM FOR RELIEF**

**(Conversion)**

13.

Plaintiff re-alleges paragraphs 1–12 as if fully set forth herein.

14.

Defendant has intentionally exercised dominion and control over plaintiff's hemp bales which seriously interferes with plaintiff's right to control the bales.

Page 3 – COMPLAINT

15.

Defendant's actions and omissions have caused the hemp bales to lose all economic value due to the way defendant has stored and continues to store the hemp bales. Due to defendant's actions, plaintiff has been damaged in the amount of $5,659,00.00 or in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Intentional Interference with Economic Relations).

16.

Plaintiff re-alleges paragraphs 1–15 as if fully set forth herein.

17.

Defendant knew that plaintiff has a contract with Farmers Choice, LLC to store, process, and sell plaintiff's hemp bales. Defendant has intentionally interfered with plaintiff's contract by holding plaintiff's hemp bales. Defendant is not a party to plaintiff's contract with Farmer's Choice, LLC. Defendant has injured plaintiff by holding plaintiff's hemp bales with the wrongful motive of advancing defendant's interest. Defendant's interference in converting plaintiff's hemp bales has harmed plaintiff.

18.

Due to defendant's actions, plaintiff has been damaged in the amount of $5,659,00.00 or in an amount to be proven at trial.

WHEREFORE, plaintiff prays for the following relief:

1. Judgment against defendant for damages in the amount of $5,659,000.00 or an amount to be proven at trial on plaintiff's First Claim for Relief.

2. Judgment against defendant for damages in the amount of $5,659,000.00 or in an amount to be proven at trial on plaintiff's Second Claim for Relief.

3. Plaintiff's attorney fees, costs, and disbursements.

4. Post judgment interest at the statutory rate of 9% per annum.

5. Such other and further relief the Court deems just and equitable.

Dated this 16th day of October 2020.

                                              CAUBLE, SELVIG & WHITTINGTON, LLP

                                              *s/Rachele R. Selvig*
                                              Rachele R. Selvig, OSB No. 095016
                                              rselvig@thecaublefirm.com
                                              *Attorney for Plaintiff*

## Agreement and Contract

This Agreement and Contract shall set the terms of a Joint Venture between the Jupiter Agricultural Seed Inc., an Oregon Corporation (hereafter referred as "Cultivator") and Farmer Choice LLC, an Oregon Limited Liability Company (hereafter referred as "Processor")

## RECITALS

A. Whereas Processor operates facility at 2251 NE Spalding Ave., Grants Pass, OR 97526 and other facilities, with the ability to process, dry, and store Hemp/CBD.

B. Whereas Cultivator cultivates hemp

C. **1. Scope of Services:** The following are services that will be offered by Processor as to "Biomass:"

1) Store the Hemp/ biomass at the Processor's facility at 2251 NE Spalding Ave., Grants Pass, Oregon;
2) Extract the Hemp to process CBD oil, THC-Free;
3) Sell the Hemp/CBD oil at a price which processor and cultivator agrees.

**2. Terms.** For services mentioned in paragraph number one, the revenue share from selling the Hemp/CBD (whether oil or flower) with be split at Fifty Percent (50) % of the net sale to Processor and Fifty Percent (50%) of the net sale to Cultivator. Processor will cover all costs of labor including storing, drying, hanging, extracting, and trucking/delivery. All costs will be reimbursed to Processor and factored into the net profits.

**3. Right To Inspect.** Each Cultivator crop will be stored individual with id tag, the Cultivator reserves the right to inspect their crop at any time during business hours with 4 hours prior notice.

**4. Modification of Agreement.** This Agreement may be supplemented, amended or modified only by the mutual agreement of the parties. No supplement, amendment or modification of this Agreement shall be binding unless it is in writing and signed by the parties.

**5. Counterpart/Electronic Signature.** This Agreement may be executed in counterparts, each of which shall be deemed to be an original hereof, all of which, taken together, constituting one and the same document. E-mail and facsimile signatures shall have the same force and effect as originals.

**6. Severability.** This Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision should be prohibited or invalid under applicable law, such provision shall be construed as ineffective only to the extent of such prohibition or

1

Exhibit 1
Page 1

invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, and shall be interpreted so as most harmoniously to reflect the basic intent and integrity of this Agreement.

**7. Binding Upon Successor and Assigns.** Except as provided in this Agreement, this Agreement shall be binding upon and inure to the benefit of both Cultivator and Processor's respective successors, heirs and assigns.

**8. Construction of Agreement.** This Agreement shall not be construed in favor of or against any either Party, regardless of which party initially drafted the Agreement. This Agreement was reached through arms-length negotiations represents a final, mutually agreeable compromise.

**9. Notices and Other Communication.** Any notice to be given under this Agreement shall be delivered in writing by: (i) personal delivery; (ii) registered or certified first class U.S. mail, return receipt requested; (iii) prepaid overnight delivery service, receipt requested; (iv) facsimile (where the noticing party maintains and makes available the facsimile confirmation sheet); or (v) e-mail; addressed in each case to the party for whom intended at their last known address or number, as applicable, unless otherwise required by law.

**10. Risk of Loss.** Processor's facilities are secure with fence, surveillance camera, alarm and protected by armed security guard. The facility is equipped with fire sprinklers, dehumidifiers, fence and other equipment to protect the hemp, however the processor is not responsible for any lose due to acts of god, theft, fire, water or mold damage. Processor will secure insurance on the stored biomass and provide policy to cultivator.

**11. Dispute Resolution.** The construction, performance and enforcement of this Agreement shall be governed by the State of Oregon, without reference to any conflict of law provisions. The venue for this agreement shall be Josephine County, Oregon.

**12. Construction of Agreement.** This Agreement shall not be construed in favor of or against either Cultivator or Processor regardless of which party initially drafted the Agreement. This Agreement was reached through arms-length negotiations represents a final, mutually agreeable compromise.

**13. Processing time.** Processor will use good faith efforts to process Cultivator's Hemp /CBD in a reasonable time. Processor will begin drying hemp on or before November 20, 2019 and will complete drying at maximum capacity of 75,000 wet pounds per day until dry. Processor will begin processing hemp on or before January 30, 2020. In the event processor does not comply with terms of the contract processor will transport bales to another facility of Cultivators choice.

14. This contract is for 300 bales. Each bale weighs approximately 2000 pounds.

IN WITNESS WHEREOF the parties bound have set forth their hands below.

| Processor | Cultivator |
|---|---|
| DocuSigned by: [signature] 11/14/2019<br>501270EDC03F4BD | DocuSigned by: *Lesa Horton* 11/14/2019<br>F2F1AC23DCA344D |
| Farmers Choice LLC<br>By: Thomas Dubiel<br>Its: Member<br>Date: November 12, 2019<br>Email address: thomasdubiel1@gmail.com | The Green Trading Company, LLC<br>By: Lesa Horton<br>Its: Member<br>Date: November 12, 2019<br>Email address: lesaelmadronal@gmail.com |