IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| THE GREEN TRADING COMPANY, LLC, An Oregon limited liability company, | Civ. No. 1:20-cv-01787-CL |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| BARRY SHY, | |
| Defendant. | |

CLARKE, Magistrate Judge.

This case comes before the Court on the Defendant's Motion for Summary Judgment (ECF 69). Full consent to magistrate jurisdiction was entered on November 6, 2023 (ECF 55) An oral argument hearing was held on March 4, 2025 (ECF 98). For the reasons below, the Motion (ECF 69) is GRANTED.

## BACKGROUND

The facts of this case are somewhat convoluted and hard to follow. Plaintiff alleges that, on November 14, 2019, Leesa Horton, on behalf of Plaintiff, the Green Trading Company LLC, delivered 200 bales of hemp to a facility located at 2251 NE Spalding Ave., Grants Pass, OR (the "Facility"), which was being leased by BT Ventures, LLC ("BT Ventures"). Defendant Barry

Page 1 – OPINION AND ORDER

Shy is the father of Rommy Shy, one of the owners of BT Ventures. Plaintiff intended the hemp at the Facility to be processed into raw hemp oil and then into CBD Delta 8 hemp distillate by another entity with rights to use the facility, Farmer Choice, LLC ("Farmer Choice"). Decl. Horton ¶ 6. At some point in the Spring of 2020, Ms. Horton became worried that Farmer Choice would not be able to perform its hemp processing contract and that she may have to pick up the hemp bales to prevent them from spoiling and attempt to have them processed into distillate somewhere else. Decl. ¶ 7.

It is generally undisputed that Ms. Horton went to the Facility on June 3, 2020, with several trucks to begin picking up her company's bales of hemp. While she was there, a man named John Riccio, who she believed to be an owner or employee of Farmer Choice, refused to allow her to pick up the hemp bales. Decl. ¶ 8. Plaintiff claims that Mr. Riccio informed Ms. Horton that Defendant Barry Shy instructed Riccio over the telephone not to release the hemp bales to Horton. Decl. ¶ 9. Horton then witnessed Riccio calling the Grants Police Department and later requesting that the police force Horton to unload the already-loaded hemp bales from her trucks and to vacate the Facility. Decl. ¶ 10. The phone call resulted in a Trespass Incident Report being filed against Horton. Decl. Horton, Ex. 3.

Plaintiff claims that, later in the day of June 3, 2020, Mr. Riccio asked Ms. Horton to sign a release of claims against BT Ventures, on behalf of Jupiter Seed Company ("Jupiter"), before Barry Shy of Farmer Choice would release the hemp bales to Ms. Horton. Decl. ¶11. Jupiter was another entity involved in hemp processing at the Facility. Ms. Horton told both Barry Shy and John Ricco over the telephone that she would sign a release of claims against Barry Shy and BT Ventures on behalf of her company, The Green Trading Company LLC, in exchange for their releasing the hemp bales to her, but that she would not sign any release on behalf of Jupiter.

Decl. ¶ 12. Plaintiff claims that Riccio and Shy refused to release the bales to her unless she signed a release of claims against Jupiter. Decl. ¶ 13.

Defendant Shy claims that he merely advised his son, and his son's company BT Ventures, to make sure that Ms. Horton was really the proper owner of the hemp bales before allowing her to remove them. Decl. Barry Shy (ECF 70). Shy believed that Jupiter might have a claim or an interest in the bales. Shy asserts that, after he learned that Jupiter released any interest in the hemp bales, Shy affirmatively requested that Ms. Horton pick up her bales, via an email sent at 3:08 PM that same day, June 3, 2020. *Id.*, Ex. 2. Plaintiff does not dispute this allegation. Mr. Shy's email stated that he wanted Ms. Horton to sign a release on behalf of the Green Trading Company, and Plaintiff claims this was an unreasonable request. Mr. Shy sent one last email on June 3 at 3:37 PM, stating that "if she will not pick up the material within seven business days then we will set the material to sell in a public auction." *Id.*, Ex. 2.

Plaintiff claims that on June 6, June 20, and July 8, 2020, Ms. Horton telephoned Barry Shy and requested that he release Plaintiff's hemp bales and request dismissal of the trespass order against her. Decl. ¶14. Defendant disputes that these calls were ever made, and he submits phone records to show that Ms. Horton did not call him on these dates. Plaintiff asserts that she used a different phone, but she does not submit any corroborating evidence, such as phone records, nor does she identify the telephone number with which she called Shy on these dates. Plaintiff also claims that she sent e-mails to Barry Shy and John Riccio on July 10 and 11, 2020, requesting permission to come pick up the bales, but the copies of the emails she submits do not include any responses from Shy. Plf. Resp. Ex. 4. (ECF 88-6). Defendant Shy claims that he does not have a record of any follow-up demand concerning the pick-up of the bales. Shy Decl.

**EVIDENTIARY OBJECTIONS**

Page 3 – OPINION AND ORDER

Defendant Shy raises several evidentiary objections to the exhibits attached to Plaintiff's Response (ECF 88).[1] The Court finds that the string of emails from Jupiter attorney Mark Fields to Barry Shy (Ex. 1, ECF 88-3), are hearsay because they are an out of court statement by a non-party and non-witness, except for the portion from Shy, who is a party. However, these emails are admissible explain Ms. Horton's state of mind, though the Court does not find them relevant to the parties' dispute in this case. The same ruling applies to Ms. Horton's declaration explaining this string of emails from Mark Fields.

Paragraph 9 of Ms. Horton's declaration states: "Mr. Riccio informed me that he was told over the telephone by Barry Shy that he should not release the bales to me." This is a double hearsay statement, offered for the truth of the matter asserted. It is not admissible under FRE 802, and it is stricken from the record.

Defendant claims that Exhibit 4 to Horton's declaration, (ECF 88-4), which includes the emails from Horton to Shy and Riccio following up about releasing the bales, was not produced until after the close of discovery in this matter. Defendant claims that the late production is prejudicial to Defendant because he was not able to ask Horton about them during the discovery process. The Court agrees. However, because consideration of these emails does not affect the outcome of this case, the Court does not strike them from the record.

Paragraph 16 of Ms. Horton's declaration states: "the Grants Pass Police Department representative I spoke with . . . told me that I would be arrested if it was reported that I was on the premises owned or controlled by Barry Shy where my hemp bales were still being stored." The Court agrees that this is hearsay and inadmissible, and additionally there is no foundation for

---

[1] Plaintiff submitted multiple amended Responses. In making evidentiary objections Defendant cites to the exhibits as submitted to the Plaintiff's First Amended Response (ECF 77), but the Court will evaluate the exhibits as submitted with the final, operative Second Amended Response (ECF 88). These appear to be substantively the same documents.

Page 4 – OPINION AND ORDER

the representative to be able to give an opinion as to whether the premises was owned or controlled by Barry Shy. This statement is stricken from the record.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff brings claims against Defendant Barry Shy for conversion and tortious interference with a contract. Defendant Shy moves for summary judgment on both claims. For the reasons below, Defendant's motion is GRANTED.

### I.    Defendant is entitled to summary judgment as to Plaintiff's claim for conversion.

"An action for conversion lies when there has been an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Oregon Bank v. Fox*, 73 Or. App. 612, 615, 699 P.2d 1147, 1149 (1985). The tort of conversion is defined in Oregon as follows:

1. Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
2. In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
    a. the extent and duration of the actor's exercise of dominion or control;
    b. the actor's intent to assert a right in fact inconsistent with the other's right of control;
    c. the actor's good faith;
    d. the extent and duration of the resulting interference with the other's right of control;
    e. the harm done to the chattel;
    f. the inconvenience and expense caused to the other.

*Becker v. Pac. Forest Indus., Inc.*, 229 Or. App. 112, 116, 211 P.3d 284, 287 (2009) (*citing* Restatement (Second) of Torts § 222A (1965); *Mustola v. Toddy*, 253 Or. 658, 664, 456 P.2d 1004 (1969) (adopting that definition of conversion)). The above list of factors to be considered in determining whether a conversion occurs is nonexclusive and no one factor is considered dispositive. *Id.* The Restatement also provides that a party in possession of personal property

who does not surrender that property under appropriate circumstances is privileged against a later claim of conversion:

> [O]ne in possession of a chattel who is in reasonable doubt as to the right of a claimant to its immediate possession does not become a converter by making a qualified refusal to surrender the chattel for the purpose of affording a reasonable opportunity to inquire into such right.

Defendant Barry Shy moves for summary judgment as to Plaintiff's claim for conversion, asserting that his limited involvement in this matter places within the protections of the Restatement's qualified refusal privilege, discussed above. The Court agrees.

While there are many disputes of facts in this case, the material facts regarding Shy's involvement are undisputed. He prevented Horton from picking up the bales, confirmed that Jupiter did not have a claim or an interest in the bales, and then he instructed Horton to come pick them up. These actions fall within the qualified refusal privilege for the party in possession.

Plaintiff claims that there is a dispute of fact regarding the type of release that Horton was being requested to sign as a pre-condition to picking up the bales of hemp. Specifically, Plaintiff claims that it had a right to preserve its claims against Farmer Choice for failing to timely process the hemp under the parties' contract, and therefore Horton should not have been required to sign a release of claims against Farmer Choice. However, Plaintiff has not submitted any direct or circumstantial evidence, or anything that could allow a jury to determine that Barry Shy, or even BT Ventures, LLC, was requiring Plaintiff to release any claims against Farmer Choice. Moreover, regardless of the release being demanded by Riccio or BT Ventures, the final communication by Shy to Plaintiff was a demand the Horton pick up the bales, with no mention of a release.

Plaintiff also contends, strangely, that Shy requested that Horton sign a release "on behalf of Jupiter." This makes no logical sense, considering that Shy already had confirmation from Jupiter's attorney that the bales did not belong to Jupiter, and considering that Horton was not an agent, owner, or employee of Jupiter, and any release signed on Jupiter's behalf would have been void and unenforceable. As discussed, the final communication from Shy did not include a demand for a signed release. A dispute of fact must be material, but it also must be genuine. There are no genuine facts here in dispute. Plaintiff's argument fails.

Defendant Shy has submitted evidence that he was acting in an advisory role to BT Ventures. Plaintiff has not shown any material dispute as to this fact, nor that Shy was an owner or an employee of BT Ventures. Plaintiff has also not shown that Shy can be held liable for the actions of BT Ventures, or its owners or employees. The undisputed facts show that, once Shy confirmed that Jupiter did not have a claim as to ownership of the bales, Shy instructed Horton to come get them. None of the evidence in the record shows that he exercised any further control or dominion over the bales or the situation in general. Plaintiff may have a variety of other contentions regarding the actions of Riccio, BT Ventures, Farmer Choice, and other entities, but Plaintiff has not shown that Shy himself took any other affirmative actions, nor that he can be held liable for the actions of anyone else. Shy's qualified refusal to surrender the bales until he had confirmation that Horton had the right to possession places him within the protections of the Restatement and the privilege. Defendant Shy is entitled to summary judgment on this claim.

## II. Defendant is entitled to summary judgment as to Plaintiff's claim for tortious interference.

To prevail on a claim for intentional interference with economic relations, a plaintiff must show each of the following elements: (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional

interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages. *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841, 844 (1995) (citations omitted). The tort "arises when a defendant induces a third party not to enter into or not to continue a business relationship with the plaintiff." *Dial Temporary Help Service Inc. v. Shrock*, 946 F. Supp. 847, 855 (D. Or. 1996). The interference must be wrongful "by some measure beyond the fact of the interference itself."

Plaintiff alleges that Defendant Shy interfered with Plaintiff's contract with Farmer Choice. The contract allowed Plaintiff to remove the bales from the Facility if Farmer Choice failed to process the bales by a date certain of January 20, 2020. Plaintiff has not shown, however, that any interference by Shy was accomplished through improper means or for an improper purpose. As discussed above, the only evidence in the record shows that Shy acted as an advisor to BT Ventures, and his actions fall within the protections of the Restatement, thus they were not wrongful or accomplished thorough improper means or for an improper purpose. Defendant Shy is entitled to summary judgment on this claim.

## ORDER

For the reasons stated above, Defendant Barry Shy's Motion for Summary Judgment is GRANTED. This case is dismissed, and judgment shall be entered for the Defendant.

DATED this __29__ day of April, 2024.

MARK D. CLARKE
United States Magistrate Judge